## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-_____-_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

FACTOR ONE SOURCE PHARMACY, LLC,
a/k/a FACTOR ONE SOURCE SPECIALTY PHARMACY, LLC,

Defendant.

---

## COMPLAINT

---

### NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, to correct unlawful employment practices on the basis of disability; under Title II of the Genetic Information Non-Discrimination Act of 2008, to correct unlawful employment practices on the basis of genetic information; and pursuant to those statutes and Title I of the Civil Rights Act of 1991, to provide appropriate relief to Daniel Reilly and other individuals who have hemophilia or have family members with hemophilia. As alleged with greater particularity below, Defendant Factor One Source Pharmacy ("Defendant" or "Factor One") recruited individuals because they or a family member had hemophilia, and unlawfully made those individuals' employment contingent upon them filling their costly hemophilia medications through Factor One. Individuals were pressured and retaliated against if they did not use Factor One to fill their hemophilia medications or if they did not change their hemophilia medications to prescriptions more profitable to Factor One. Factor One also unlawfully shared with other employees both that these individuals and their

family members had hemophilia and what medications these individuals and their family members were prescribed for their hemophilia.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and Section 207(a) of the Genetic Information Non-Discrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I and Title V of the ADA and Title II of GINA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and by Section 207(a) of GINA, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a Maryland Corporation, has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5),

(7), and under Section 201(2)(B)(i) of GINA, 42 U.S.C.§ 2000ff(2)(B)(i), which incorporate by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of Title I of the ADA, 42 U.S.C. § 12111(2).

7.      At all relevant times, Defendant has been an employer under Section 201(2)(B) of Title II of GINA, 42 U.S.C. § 2000ff (2)(B).

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Daniel Reilly filed a charge with the Commission alleging violations of the ADA and GINA by Defendant.

9.      On June 6, 2022, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that ADA and GINA were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.     The Commission and Factor One engaged in an extensive conciliation process, but the Commission ultimately issued a Notice of Failure of Conciliation on September 14, 2023.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

12.     Defendant has engaged in unlawful employment practices, in violation of Section 102 of Title I and Section 403 of Title V of the ADA, 42 U.S.C. §§ 12112 and 12203, and Sections 202, 206, and 207 of Title II of GINA, 42 U.S.C. §§ 2000ff–1, 2000ff–5, and 2000ff–6.

### Hemophilia

13.     Hemophilia is a bleeding disorder in which blood does not clot properly due to low amounts of proteins called clotting factors.

14.    "Factor concentrate", or simply "factor", is a medication prescribed to treat hemophilia.

15.    The amount of "factor" that an individual needs to treat their hemophilia depends on each individual's unique circumstances – the severity of their hemophilia, their weight, and whether they have an inhibitor.

16.    Some individuals with hemophilia develop an antibody called an inhibitor that stops the clotting factors from being able to clot the blood and stop bleeding.

17.    The factor used to treat an individual's hemophilia can cost hundreds of thousands of dollars a month.

18.    When a person with hemophilia also has an inhibitor the treatment costs are even higher.

**Defendant Factor One**

19.    Factor One is a pharmacy company providing highly specialized prescriptions and medication management services for individuals with chronic medical conditions such as hemophilia.

20.    During the period of the alleged unlawful activity described in this Complaint, Factor One was owned and operated by among others, Sajal Roy, its then current Chief Executive Officer.

21.    On November 16, 2018, Factor One's ownership changed.

22.    Former Factor One Chief Executive Officer Sajal Roy stated the company "wanted to pursue" hiring people with hemophilia.

23.    When hired by Factor One, employees with hemophilia or family members with hemophilia would often transfer their hemophilia prescriptions to be filled by Factor One.

24.     Some employees were told they were required to use Factor One pharmacy services for their hemophilia medications.

25.     Factor One made more profit from some hemophilia medications than others.

26.     Factor One's Vice President Jeffery Black asked employees to change their prescriptions to medications that were more profitable to Factor One.

27.     Vice President Black asked employees to change hemophilia medications at the direction of Factor One CEO Roy.

28.     Factor One required employees to call other employees monthly about refilling their hemophilia prescriptions.

### Daniel Reilly

29.     Daniel Reilly has hemophilia.

30.     Reilly's hemophilia substantially limits the operation of his hemic system.

31.     At all relevant times Reilly was qualified and able to perform the essential functions of his position at Factor One, with or without reasonable accommodation.

32.     Reilly is a qualified individual with a disability as defined under the ADA.

33.     Factor One Vice President Black recruited Reilly to work for Factor One.

34.     Vice President Black knew Reilly from Reilly's prior work experience in patient programs for hemophilia.

35.     When interviewing Reilly for a job at Factor One, Vice President Black asked Reilly about his hemophilia medication.

      a.  Vice President Black asked Reilly what medication he was taking for his hemophilia.

    b.   Vice President Black asked Reilly how often he had infusions of hemophilia medication.

    c.   Vice President Black asked Reilly what dosage he took with each infusion of hemophilia medication.

36.    On June 27, 2016, Factor One hired Reilly as its Director of Programs.

37.    Reilly initially reported to Vice President Black.

38.    After Reilly's hiring, Vice President Black asked Reilly to change his hemophilia prescription.

39.    Reilly refused to change his hemophilia medication.

40.    Factor One's employee and former part-owner, Stephen LeCoste told Reilly that because Factor One paid for Reilly's health insurance, Reilly was obligated to support the company by changing his medication.

41.    Reilly still refused to change his medication.

42.    In approximately June 2017, Factor One changed Reilly's supervisor to Lesley Lemarie.

43.    Manager Lemarie was Factor One's Director of Hemophilia Programs.

44.    Manager Lamarie pressured Reilly to change his pharmacy and his prescription.

45.    Neither Lemarie nor any other manager ever expressed to Reilly any concerns about his job performance.

46.    Reilly's personnel file contains no record of discipline or counseling regarding job performance.

47.    Reilly's personnel file contains no record of discipline or counseling of any kind.

48.    On July 7, 2017, Factor One discharged Reilly.

49.     Factor One's stated reason for Reilly's discharge was that his job was eliminated as part of a "Reorganization/Reduction."

50.     When discharged, Reilly had never agreed to use Factor One pharmacy services, or to change his hemophilia medication.

## Employee 1

51.     On June 1, 2016, Factor One hired Employee 1 as a Patient Advocate.

52.     At all relevant times Employee 1 was qualified and able to perform the essential functions of her positions at Factor One, with or without reasonable accommodation.

53.     At all relevant times, Employee 1 had two sons with hemophilia.

54.     Employee 1's sons' hemophilia substantially limits the operation of their hemic systems.

55.     When Factor One hired Employee 1, it knew her sons had hemophilia.

56.     Employee 1 is a qualified individual with a relationship to individuals with a known disability as defined under the ADA.

57.     The fact that Employee 1 had sons with hemophilia is genetic information under the Genetic Information Non-discrimination Act. 42 U.S.C. § 2000ff(4)(A)(iii).

58.     Factor One hired Employee 1 because she has two sons with hemophilia.

59.     While employed by Factor One, management pressured Employee 1 to have her sons' hemophilia medications filled by Factor One.

60.     While employed by Factor One, management pressured Employee 1 to switch her sons' medication from an "as-needed" regimen to a "preventative" regimen.

61.     A "preventative" regimen would have required more consistent and frequent infusions of hemophilia medication.

62.     Employee 1 refused to switch her sons' medication regimen.

63.     Despite her refusal to alter her sons' medical treatment, management at Factor One continued to pressure Employee 1 to make this change.

64.     Factor One's performance review for Employee 1's position used a scale from 1 to 5, with a 3 meaning "Meets Expectations" and 1 meaning "Does Not Meet Expectations."

65.     In Employee 1's June 2017 performance review, Factor One rated her as a 3 or better in each category, for an overall average of 3.5.

66.     Employee 1 had the highest average score of the five Patient Advocates evaluated by Daniel Reilly in Factor One's June 2017 performance reviews.

67.     The other four Patient Advocates evaluated with Employee 1 in June 2017 had average scores of 3.25, 2.75, 2.75, and 1.50

68.     In July 2017, Factor One discharged the two highest ranking Patient Advocates - Employee 1 and her colleague who scored 3.25.

69.     In July 2017, Factor One retained the three Patient Advocates scored below 3 on their June performance reviews.

70.     Employee 1 had never agreed to have her sons' hemophilia medications filled by Factor One.

71.     Employee 1 had never agreed to change her sons to a "preventative" regimen of hemophilia medication.

72.     Upon information and belief, the other Patient Advocate selected for layoff in July 2017 was not using Factor One to provide his hemophilia medication.

73.     Upon information and belief, the three lowest ranking Patient Advocates who were not selected for lay off in July 2017 were using Factor One to fill their hemophilia prescriptions.

**Employee 2**

74.     Employee 2 has hemophilia.

75.     Employee 2's hemophilia substantially limits the operation of her hemic system.

76.     At all relevant times Employee 2 was an individual with a disability under 42 U.S.C. § 12102.

77.     At all relevant times Employee 2 was qualified and able to perform the essential functions of her positions at Factor One, with or without reasonable accommodation.

78.     Employee 2 is a qualified individual with a disability as defined under the ADA.

79.     At all relevant times, Employee 2 had three sons with hemophilia.

80.     Employee 2's sons' hemophilia substantially limits the operation of their hemic systems.

81.     When Factor One recruited Employee 2 to work at Factor One, it knew her sons had hemophilia.

82.     Employee 2 is a qualified individual with a relationship to individuals with a known disability as defined under the ADA.

83.     The fact that Employee 2 had sons with hemophilia is genetic information under the Genetic Information Non-discrimination Act. 42 U.S.C. § 2000ff(4)(A)(iii).

84.     Before being hired, Employee 2 met with Factor One's CEO Sajal Roy and Janette Salvo, the Factor One employee who recruited Employee 2.

85.     During the meeting Salvo asked Employee 2 how many units of "factor" her boys used.

86.     CEO Roy asked about one of Employee 2's sons who had been diagnosed with an inhibitor.

87.     CEO Roy said he would hire Employee 2 but strongly encouraged that she and her boys switch to different hemophilia medication.

88.     Factor One hired Employee 2 as a Regional Sales Representative on or around June 6, 2017.

89.     Salvo told Employee 2 that she only needed to turn in time sheets to be paid, and it didn't matter whether she worked or not.

90.     Employee 2 complained to CEO Roy that she felt discriminated against and ostracized because she was not meaningfully allowed to work, was denied bonuses, and was denied the opportunity to advance.

91.     When Employee 2 failed to fill hemophilia prescriptions with Factor One, she was reprimanded by CEO Roy.

92.     In reprimanding her, CEO Roy told Employee 2 that he could not continue to pay her unless she regularly ordered hemophilia medication from Factor One.

93.     Employee 2 felt forced to resign when she left Factor One on or around October 15, 2017.

**Employee 3**

94.     Employee 3 has hemophilia.

95.     Employee 3's hemophilia substantially limits the operation of his hemic system.

96.     Employee 3 was employed by Factor One in the position of Regional Sales Representative.

97.     At all relevant times Employee 3 was qualified and able to perform the essential functions of his position at Factor One, with or without reasonable accommodation.

98.     Employee 3 is a qualified individual with a disability as defined under the ADA.

99.    Factor One employee and part-owner, Elizabeth Purvis, recruited Employee 3 to work for Factor One.

100.    Part-owner Purvis told Employee 3 that if he wanted the job, he would need to move from his residence in Utah because Factor One could not use his insurance in Utah.

101.    Part-owner Purvis told Employee 3 he would only be hired if Factor One could use his insurance to fill his hemophilia medication.

102.    Employee 3 moved to Ohio, and was hired by Factor One as a Regional Sales Representative on August 1, 2015.

103.    While employed at Factor One, Employee 3 was required to have his hemophilia prescription filled by Factor One.

104.    Employee 3 was asked by Factor One to change his hemophilia medication.

105.    Employee 3 initially refused to change his hemophilia medication.

106.    After Vice President Black told Employee 3 that he would be terminated if he did not change his hemophilia prescription, Employee 3 acquiesced to making the change.

107.    Employee 3 felt forced to subsequently resign from Factor One.

### First Claim for Relief

**Discriminatory Terms and Conditions of Employment – Disability, Genetic Information**
**(42 U.S.C. §§ 12112(a), (b)(4), 42 U.S.C. § 2000ff–1(a))**

108.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

109.    Factor One pressured Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals to fill their and their family members' hemophilia prescriptions through Factor One.

110.    The pressure to use Factor One pharmacy services for hemophilia medication included calls from coworkers reminding the employee to order refills for hemophilia

prescriptions.

111.    Factor One pressured Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals to change hemophilia prescriptions for themselves and/or their family members.

112.    By pressuring employees with hemophilia to use Factor One pharmacy services for their hemophilia medications and to change their hemophilia medication, Factor One altered these employees' terms and conditions of employment because of their disability, in violation of the ADA.

113.    By pressuring employees who had family members with hemophilia to use Factor One pharmacy services for their family members' hemophilia medications and to change their family members' hemophilia medication, Factor One altered these employees' terms and conditions of employment because of their relation to a family member with a disability, in violation of the ADA.

114.    By pressuring employees who had family members with hemophilia to use Factor One pharmacy services for their family members' hemophilia medications and to change their family members' hemophilia medication, Factor One altered these employees' terms and conditions of employment because of their genetic information, in violation of GINA.

115.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals of equal employment opportunities because of their disability, and/or their relation to an individual with a known disability, and/or their genetic information.

116.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other

aggrieved individuals.

117.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

118.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

### Second Claim for Relief

**Hostile Work Environment – Disability, Genetic Information**
**(42 U.S.C. §§ 12112(a), (b)(4); 42 U.S.C. § 2000ff–1(a))**

119.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

120.    By pressuring employees who have hemophilia, or have family members with hemophilia, to use Factor One pharmacy services for their hemophilia medications, and pressuring them to change their hemophilia medications and/or those of family members, Factor One created a work environment that was hostile to these employees because of their disability and/or their relation to a family member with hemophilia and/or their genetic information.

121.    The conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

122.    The actions of Factor One supervisors and upper management contributed to the hostile work environment.

123.    Factor One knowingly created the hostile work environment by its pressure on its employees to order their family's hemophilia medications through Factor One, and to change to

the hemophilia medications that generated the most profit for Factor One.

124.    Factor One failed to take reasonable measures to prevent and promptly correct the discriminatory and harassing conduct in the work place.

125.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

126.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals of equal employment opportunities because of their disability, or their relation to an individual with a known disability, or their genetic information.

127.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

128.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

### Third Claim for Relief

**Discriminatory Adverse Employment Actions – Disability, Genetic Information
(42 U.S.C. §§ 12112(a), (b)(4), 42 U.S.C. § 2000ff–1(a))**

129.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

130.    Factor One took adverse employment actions against Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals because of their disabilities, because of their relation to an individual with a known disability, and/or because of their genetic information.

131.    All of the adverse actions were taken because of the employee's hemophilia, their

relationship with a family member with hemophilia, and/ or their genetic information known to Factor One.

132.    Upon information and belief, Factor One similarly took adverse employment actions against other employees who had hemophilia or had family members with hemophilia, because of their disability, their relationship with a family member with a disability, and/or their genetic information known to Factor One.

133.    By its discriminatory adverse employment actions, Factor One denied employment opportunities to Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals because of disability, because of their relation to an individual with a known disability, and/or because of their genetic information, in violation of the ADA and GINA.

134.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals of equal employment opportunities because of their disability, their relation to an individual with a known disability, and/or because of their genetic information.

135.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

136.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

137.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

**Fourth Claim for Relief**

**Prohibited Medical Inquiry – Disability**
**(42 U.S.C. § 12112(d))**

138.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

139.    Factor One inquired about the confidential medical information of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals as part of its hiring and recruitment process.

140.    The medical inquiries into the diagnosis and treatment of hemophilia complained of in the paragraphs above are prohibited by Sections 102(d)(2) and (d)(3) of the ADA. 42 U.S.C. § 12112(d)(2), (d)(3).

141.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals subjected to Factor One's prohibited medical inquiries.

142.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

143.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

**Fifth Claim for Relief**

**Prohibited Acquisition of Genetic Information**
**(42 U.S.C. § 2000ff–1(b))**

144.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

145.    As part of its hiring and recruitment process, Factor One sought out the genetic information about Employee 1, Employee 2, and other potential job applicants in the hemophilia community.

146.    The fact that Employee 1's two sons have hemophilia is genetic information under GINA.

147.    The fact that Employee 2's three sons have hemophilia is genetic information under GINA.

148.    Factor One intentionally obtained information that Employee 1 had two sons who had hemophilia.

149.    Factor One intentionally obtained information that Employee 2 had three sons who had hemophilia.

150.    Upon information and belief, Factor One intentionally obtained family history information about other employees or potential employees, indicating they had family members with hemophilia.

151.    Factor One continued to seek genetic of information of Employee 1, Employee 2, and other aggrieved individuals during their employment by repeatedly questioning and pressuring them about their family members' hemophilia medication and treatment.

152.    Factor One acquired the genetic information of Employee 1, Employee 2, and other aggrieved individuals in violation of Section 202(b) of Title II of GINA, 42 U.S.C. § 2000ff–1(b).

153.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Employee 1, Employee 2, and other aggrieved individuals to deprive them of the financial and other benefits of working for Factor One.

154.    The unlawful employment practices complained of in the forgoing paragraphs were

intentional.

155.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Employee 1, Employee 2, and other aggrieved individuals.

## Sixth Claim for Relief

### Prohibited Disclosure of Confidential Medical Information – Disability
### (42 U.S.C. § 12112(d))

156.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

157.    In the course of Factor One's business, it improperly disclosed confidential medical information about employees' hemophilia, family members' hemophilia, and the hemophilia medication and treatment of employees and family members.

158.    In the course of Factor One's business, it created a workplace culture in the hemophilia program of openly discussing employees' and family members' hemophilia, medication, and treatment.

159.    Additionally, Factor One required employees to make monthly calls to coworkers, to remind them to order refills for their hemophilia medications, thus disclosing the confidential medical information of each employee to another employee.

160.    Factor One disclosed confidential medical information of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals in violation of Section 102(d) of Title I of the ADA, 42 U.S.C. § 12112(d).

161.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other

aggrieved individuals.

162.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

163.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

### Seventh Claim for Relief

### Prohibited Disclosure of Genetic Information
### (42 U.S.C. § 2000ff–5(b))

164.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

165.    In the course of Factor One's business, it improperly disclosed employees' family medical history of hemophilia, including that an employee's children had hemophilia and their hemophilia medication and treatment.

166.    Factor One disclosed genetic information of Employee 1, Employee 2, and other aggrieved individuals in violation of Section 206(b) of Title II of GINA, 42 U.S.C. § 2000ff–5(b).

167.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Employee 1, Employee 2, and other aggrieved individuals.

168.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

169.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Employee 1, Employee 2, and other aggrieved individuals.

## Eighth Claim for Relief

### Retaliation – Disability, Genetic Information
### (42 U.S.C. § 12203(a); 42 U.S.C. § 2000ff–6(f))

170.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

171.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals rejected Factor One's overtures to fill their hemophilia medication through Factor One.

172.    Employee 1, Employee 2, and other aggrieved individuals rejected Factor One's overtures to fill their family members' hemophilia medication through Factor One.

173.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals rejected Factor One's overtures to change their own and/or their family members' hemophilia medications.

174.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals were repeatedly pressured by Factor One to change medications and pharmacies, despite their earlier refusals.

175.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals engaged in protected conduct under the ADA and GINA when they rejected Factor One's unlawful overtures to use Factor One pharmacy services for hemophilia medications for themselves and/or their family members.

176.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals engaged in protected conduct under the ADA and GINA when they rejected Factor One's unlawful overtures to change their own or their family members' hemophilia medications.

177.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals were discharged or subjected to other adverse employment actions after rejecting Factor One's unlawful

overtures.

178.    Factor One retaliated against Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals for opposing acts or practices made unlawful by the ADA and/or GINA, in violation of Section 503(a) of Title V of the ADA, 42 U.S.C. § 12203(a), and Section 207(f) of Title II of GINA, 42 U.S.C. § 2000ff–6(f)

179.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals of equal employment opportunities because of their disability, or their relation to an individual with a known disability, or their genetic information.

180.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

181.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

182.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

### <u>Ninth Claim for Relief</u>

**Interference, Intimidation, Threats, or Coercion – Disability**
**(42 U.S.C. § 12112(b))**

183.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

184.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals engaged in protected conduct under the ADA when they rejected Factor One's unlawful overtures to use

Factor One pharmacy services for hemophilia medications for themselves and/or their family members.

185.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals engaged in protected conduct under the ADA when they rejected Factor One's unlawful overtures to change their own or their family members' hemophilia medications.

186.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals were repeatedly pressured by Factor One to change medications and pharmacies, despite their earlier refusals.

187.    Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals were discharged or subjected to other adverse employment actions after rejecting Factor One's unlawful overtures.

188.    By its persistent pressure on Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals to use Factor One pharmacy services for their own and their family's hemophilia medication, and to change their own or family members' hemophilia medications, and by various adverse employment actions including threats to discharge or stop paying the salary of employees who did not comply, Factor One coerced, intimidated, threatened, and/or interfered with such employees' exercise and enjoyment of their rights under the ADA, and/or on account of their having exercised or enjoyed those rights, in violation of Section 503(a) of Title V of the ADA, 42 U.S.C. § 12203(a).

189.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals of equal employment opportunities because of their disability, or their relation to an individual with a known disability,

or their genetic information.

190.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals to deprive them of the financial and other benefits of working for Factor One.

191.    The unlawful employment practices complained of in the forgoing paragraphs were intentional.

192.    The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to the federally protected rights of Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from:

i.    requiring employees who have hemophilia, or have family members with hemophilia, to use its pharmacy services;

ii.    requiring employees to alter their own or their family members' hemophilia medications or treatments;

iii.    making medical inquiries of applicants or employees except as expressly allowed under the ADA;

iv.    acquiring genetic information (including family medical history) from applicants or employees, except as expressly allowed under GINA;

      v.     disclosing confidential medical or genetic information (including family medical history) other than expressly allowed under the ADA and GINA;

     vi.    retaliating against applicants or employees for opposing any of the unlawful practices listed above;

    vii.    coercing, intimidating, threatening, and/or interfering with applicants' or employee's exercise of rights under the ADA and GINA.

B.    Order Defendant to institute and carry out policies, practices, and programs that (1) provide equal employment opportunities for qualified individuals who have a disability, or have a relationship to an individual with a known disability; and (b) eradicate the effects of its past and present unlawful employment practices.

C.    Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Defendant unlawfully discriminated against individuals in violation of the ADA, 42 U.S.C. § 12112, by:

      i.    requiring or pressuring applicants and/or employees with hemophilia or family members with hemophilia to use Defendant's pharmacy services for their medications; and

     ii.    requiring or pressuring applicants and/or employees to alter their or their family members' hemophilia medication and treatment.

D.    Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Defendant unlawfully discriminated against individuals in violation of GINA, 42 U.S.C. § 2000ff–1, by:

      i.    requiring or pressuring applicants and/or employees with family members with hemophilia to use Defendant's pharmacy services for their family members' medications; and

     ii.    requiring or pressuring applicants and/or employees to alter their family

members' hemophilia medication and treatment.

E.      Order Defendant to make whole Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or frontpay.

F.      Order Defendant to make whole Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

G.      Order Defendant to make whole Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H.       Order Defendant to pay Reilly, Employees 1, 2, and 3, as well as other aggrieved individuals punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

I.      Grant such further relief as the Court deems necessary and proper in the public interest.

J.      Award the Commission its costs of this action.

Respectfully submitted this 5th day of June 2024.

> Karla Gilbride
> General Counsel
>
> Christopher Lage
> Deputy General Counsel
>
> Mary Jo O'Neill
> Regional Attorney

Rita Byrnes Kittle
Assistant Regional Attorney

*/s/ Michael LaGarde*
Michael LaGarde
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office
950 17th Street, Suite 300
Denver, CO 80202
(720) 779-3631
michael.lagarde@eeoc.gov

PLEASE NOTE:

For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys.  Duplicate service is not required on the General Counsel and Deputy General Counsel in Washington, D.C.